M'Clure and Others *v.* M'Cormick.

A sheriff advertised certain land to be sold on execution on *Saturday* the 5th of *January*, when, in fact, *Friday* was the 5th of that month. The sheriff was informed, before the day of sale, of the error, and promised the execution-debtor to postpone the sale to some day which should be correctly advertised. The sheriff, however, sold the land under the execution

on *Friday* the 5th of *January*, at public sale, to the execution-creditor. The execution-debtor, apprized of such sale, informed one *A. B.* of his (the debtor's) inability to redeem the land, showed him the boundaries, and consented that he should buy it. *A. B.*, afterwards, bought the land of the purchaser at the sheriff's sale. *Held*, that if the execution-debtor ever had a right to have the sheriff's sale vacated on account of the mistake in the advertisement of the sale, (of which no opinion was given,) he had, by his conduct above stated, waived that right.

The answer of one defendant to a bill in chancery is not evidence against his co-defendant.

A parol agreement to convey land is void by the statute of frauds.

ERROR to the *Switzerland* Circuit Court.

DEWEY, J.—In 1824, *Samuel M'Cormick*, the defendant in error, was seised and possessed of two tracts of land, situate in *Switzerland* county, containing about four hundred and ninety acres ; during that year he executed to one *Dow* a mortgage of part of the premises to secure the payment of 116 dollars, and to one *Patterson* a mortgage on all the land for 300 dollars.

In 1826, the mortgages being entirely unsatisfied, and bills to foreclose them being pending in the *Switzerland* Circuit Court, *James H.* and *John M'Clure* obtained judgment against *Samuel M'Cormick* in that Court for 205 dollars. In the latter part of that year, they took out execution upon their judgment, and caused it to be levied upon the two tracts of land by the sheriff of *Switzerland* county. On the 5th of *January*, 1827, the sheriff sold the land by virtue of the execution at public auction, and the execution-creditors became the purchasers at the price of 205 dollars, and took the sheriff's deed of conveyance. On the 4th of *April*, 1827, *James H.* and *John M'Clure* sold the land to *Thomas M'- Cormick* for 250 dollars, and executed a written contract to convey the same to him, subject to the mortgages. On the 9th of the same *April*, *Thomas M'Cormick* satisfied the mortgages and paid for that purpose 524 dollars, making the price which he paid for the land 774 dollars.

In 1830, *Samuel M'Cormick* filed his bill in chancery for the purpose of annulling the sheriff's deed to the *M'Clures* and their contract with *Thomas M'Cormick*. *James H. M'Clure*, the heirs and widow of *John M'Clure* (then deceased,) and *Thomas M'Cormick*, the plaintiffs in error, are the defendants to the bill.

The bill charges that the sheriff, in advertising the sale of the land upon the execution, gave notice that it would take place on *Saturday* the 5th of *January*, when in fact *Friday* was the 5th of that month ; that on the *Tuesday* previous to the day of sale, the complainant apprized the sheriff of the mistake in the notice, on which the latter agreed not to sell the property under that notice, and promised to advertise a sale on some other day, observing that he could not legally sell under the erroneous notice, and that complainant might rest contented ; that it was then in the power of the complainant to replevy the judgment and save the land, which he should have done had he not been lulled into a false security by the assurance of the sheriff that the sale should not proceed under the mistaken advertisement ; that on the 5th of *January*, James H. *M'Clure*, (who lived at *New-Port, Kentucky,*) visited *Vevay*, when he fraudulently and deceitfully induced the sheriff not to postpone the sale, by telling him it was the wish and instruction of the complainant that it should take place on that day, and that he, *M'Clure*, designed to purchase the land for the complainant's benefit ; that the assertion made by *James H. M'Clure* to the sheriff, that the complainant wished and directed the sale to be made on that day, was false ; that the sheriff, thus deceived by *M'Clure*, did sell the land on the 5th of *January*.

The bill further alleges that, at the time of sale, *James H. M'Clure* publicly stated that he was purchasing the property for the benefit of the complainant ; that several persons had bid 500 dollars, but were induced to withdraw their bids by the representation of *M'Clure* that they would injure the complainant by insisting upon them, by which means *James H. M'Clure* purchased the premises for himself and *John M'Clure* at a great sacrifice to the complainant, the land being then worth 5,000 dollars ; that complainant was always ready to pay to the *M'Clures* the money bid by them and all charges on the land after deducting rents and profits, but that they had at all times refused to yield their purchase to him, and, immediately, without the knowledge or consent of the complainant, sold the property to *Thomas M'Cormick* for 50 dollars advance, but had made him no deed.

The bill charges *Thomas M'Cormick* with full knowledge of the facts alleged in the bill, previous to his purchase of the *M'Clures*, and further alleges, that shortly after that purchase he took possession of the premises, stating that he designed them for complainant's benefit ; that the latter remained on the land until *March*, 1828, when he was forcibly expelled by *Thomas M'Cormick*. Waste and the receipt of rents and profits are also charged against *Thomas M'-Cormick*.

The bill prays for an account, and that the sheriff's sale, and the contract between the *M'Clures* and *Thomas M'-Cormick*, be annulled, and the title to the premises be decreed to be in the complainant.

*James H. M'Clure's* answer admits that the sheriff's sale was on the 5th of *January*, and that that day was *Friday* ; it admits, also, the error in the notice of sale in stating *Saturday* to be the 5th day of the month, but it neither admits nor denies his knowledge of the mistake at the time the sale took place, and insists that the transaction was fair and honest ; denies that he had any design, or used any means, to defraud or injure the complainant, and that he had any knowledge or notice of an arrangement between the complainant and the sheriff respecting the postponement and advertisement of the sale ; declares the statement in the bill, that several persons bid at the sheriff's sale 500 dollars for the property, and would have bought it had not *James H. M'Clure* prevented them by stating that he was purchasing it for complainant, to be substantially false, and avers that only one *Patton*, the agent for the mortgagees, who supposed that to protect the interest of his principals, he must bid to the amount of the mortgages, offered 500 dollars, but that he, on being informed that the land was sold subject to the mortgages, withdrew his bid.

*James H. M'Clure* further denies that the sheriff was induced to sell under the erroneous notice, in consequence of being informed by him that it was the wish of the complainant that the sale should take place on the 5th of *January;* alleges that he was informed of the time and place of sale by his legal counsel, at whose advice he purchased the

property solely for the purpose of realizing his debt, and May Term, that he had no wish to hold the land; that the day after the 1839. sale, he informed the complainant that he had made the purchase, and told him that if he or his friends would raise the money due the *M'Clures* and expenses, the land should be conveyed to complainant's children; that complainant seemed well pleased with what had been done, but expressed an apprehension that the means of redemption were not at his command; that the complainant made no intimation that the sheriff had promised to postpone the sale, nor did he complain of any part of the proceedings; that two or three weeks afterwards he attempted to induce the father-in-law of the complainant to redeem the land; admits that before, at, and after the sale, he might have said that his intention was to suffer the complainant to redeem the land; but denies he ever made any agreement to do so, or that he ever declared he had made such an agreement; alleges that complainant never offered to redeem, or represented that he could redeem, until after the sale by the *M'Clures* to *Thomas M'Cormick*, to wit, in the fall of 1828, when he stated that a friend would loan him money to redeem with, if he would go after it.

*James H. M'Clure* also states in his answer, that when the *M'Clures* sold the land to *Thomas M'Cormick*, he agreed with them verbally that he would convey one-third of the premises to the complainant or his children within two years; that finding he did not mean to comply with this promise, they had refused to make him a deed for the land.

*Thomas M'Cormick*, by his answer, denies all knowledge before his purchase from the *M'Clures* of any error in the notice of the sheriff's sale, of fraud in that sale, and of management or false representations on the part of the *M'Clures*, or of either of them, to bring about the sale on the 5th of *January*, and alleges his belief to be that all the charges of fraudulent management made in the bill against the *M'Clures* or either of them, are untrue; denies that he ever knew or believed that the *M'Clures* purchased the land at the sheriff's sale in trust for the complainant, or in any way for his use or benefit; alleges that in making the purchase of

M'CLURE
v.
M'CORMICK.

the *M'Clures*, he did not act under any promise or undertaking to the complainant, or to any other person for him, and denies all recollection of any condition or restriction imposed upon him by that contract, except the satisfying the mortgages. He admits that his principal motive in purchasing the land, was the desire to procure for the complainant " indulgence for his debts," and to save him from the necessity of quitting the premises ; he denies that the complainant ever offered to redeem the property, and does not admit any obligation upon himself to suffer him to redeem had the offer been made ; avers that he took peaceable possession of the land with the consent of the complainant soon after he purchased it, and that the latter voluntarily and quietly left it in *March*, 1828.

The infant heirs of *John. M'Clure* answered by guardian *ad litem* in the usual form. The bill was taken as confessed against his widow.

The Circuit Court, after hearing the testimony, decreed that the sheriff's sale of the land to the *M'Clures* was fraudulent and void, and that his deed of conveyance to them, and also the contract of sale by them to *Thomas M'Cormick*, be set aside. It was further decreed, that *Thomas M'Cormick* should hold the land in security for the money paid by him until the further order of the Court ; and that an account of the rents, profits, and improvements, &c. be taken.

The account was taken before a master in chancery, and the Circuit Court subsequently decreed, that upon the payment of a certain sum of money by the complainant to *Thomas M'Cormick*, the latter should surrender the premises ; and, on his failure to do so, a writ of *habere facias possessionem* should issue.

To reverse this decree the plaintiffs prosecute this writ of error.

The prominent grounds, on which the complainant founds his claim to set aside the sheriff's sale, and be restored to the possession and ownership of the property in dispute, are, that *James H. M'Clure*, one of the execution-creditors, induced the sheriff to sell the land on the 5th of *January* under the erroneous notice of sale, by fraudulently repre-

senting to him that it was the wish and instruction of the complainant that he should do so ; that, at the sale, *M'Clure* prevented higher bidding than his own, by representing that he was purchasing the property for the complainant, thus obtaining the land at a price greatly under its value ; and that these facts were known to *Thomas M'Cormick* when he purchased the property of the *M'Clures*.

The answers distinctly negative all these positions, and thus form the real issues between the parties.

The proof does establish the fact, that the sheriff's sale was notified to be on *Saturday* the 5th of *January*, and that *Friday* was the 5th of that month. It is also proved that the sheriff was apprized of the error, and that he promised the complainant to postpone the proposed sale to some day which should be correctly advertised. But there is no proof whatever, that *James H. M'Clure* or any other person induced the sheriff to change his purpose and sell on the 5th of *January*, by asserting that it was the wish of the complainant that he should do so. It is, however, by no means certain that such was not his wish. The bill states, that the complainant informed the sheriff of the error in the advertisement on the *Tuesday* previous to the day of sale, when the sheriff promised him he would not sell under that notice. It is in proof that after the complainant became acquainted with the mistake, and a " short time " before the sale, he was ten miles on his way to the residence of the *M'Clures*, with a view to request *James H. M'Clure* to attend the auction and bid off the property, lest it should go to some one else, and the judgment of the *M'Clures* remain unsatisfied ; and that upon being informed that *James H. M'Clure* was apprized of the time and place of, and would attend the sale, he expressed his satisfaction and returned home. It is also proved that on more than one occasion after the sale, he conversed on the subject without complaining of the conduct of the *M'Clures* or of that of either of them, and appeared to be pleased that they had purchased the property.

Nor is there satisfactory evidence, though there is some testimony on the subject, that *James H. M'Clure* influenced the bidding of others, by representing that he was bidding

for the benefit of the complainant. He only stated that he designed to permit the complainant to redeem the premises should he become the purchaser. This statement, together with the information that the land was to be sold subject to the mortgages, induced the agent of the mortgagees to withdraw a bid of 500 dollars, which had not been accepted by the sheriff, and which was the only offer of a larger sum for the premises than that which was given by the *M'Clures.* That *James H. M'Clure* acted in good faith in thus declaring his intention to permit the complainant to redeem, is evident from the facts appearing in proof that he did, after the sale, offer to the complainant the privilege of redeeming the land, and that he did attempt to induce the father-in-law of the complainant to advance the money for him ; and by the further fact, that, in selling to *Thomas M'Cormick,* the *M'Clures* exacted a price for the land barely sufficient to indemnify themselves.

Neither is the allegation of the bill, that the property was bid off by *James M'Clure* at the sheriff's sale for a sum greatly less than its value, sustained by the proof. The bid of *M'Clure,* which covered the judgment on which the land was sold, together with the money secured by the mortgages, amounted to 774 dollars. The weight of the evidence *is,* that the property at the time of the sale was worth about 1,000 dollars. This is not so great an inadequacy of price as to justify a suspicion of fraud in the sale.

It is needless to remark that a knowledge of facts, which do not appear to have existed, was not brought home to *Thomas M'Cormick.*

It is evident, that the charge of actual fraud in procuring the sale to take place on the 5th of *January* under the erroneous notice, and in deterring a fair competition in bidding for the property, is not sustained by the proof.

But it is contended, that the fact that an error was committed by the sheriff in advertising the auction is sufficient to invalidate the sale to the *M'Clures,* the judgment-creditors ; and that *Thomas M'Cormick* stands in no better situation than they, because he had notice of the mistake at the time he purchased the land of them. This notice is

denied by his answer, and is sustained by the testimony of but one witness.

It is, however, unnecessary to inquire in this case, what would be the effect of an error in the advertisement of a sheriff's sale upon execution, upon the purchase by the judgment-creditor of land at such sale, or upon a contract made by him to a subsequent purchaser with notice. We think that the complainant, if he ever had a right to vacate the sale upon this ground, waived his privilege by his subsequent conduct. The testimony shows, that prior to the purchase by *Thomas M'Cormick* of the *M'Clures*, the complainant declared to the former his inability to redeem the land, that he showed its boundaries to him, and consented that he should purchase it. It is a principle of law, that if a person having a right to an estate permit another to purchase it without making known his claim, the purchaser shall hold it against the person having such right. 2 Sugd. Vend. Am. ed. 300, and notes.

*James H. M'Clure* states, in his answer, that when the *M'Clures* contracted to sell the land to *Thomas M'Cormick*, and to convey it to him, the latter agreed verbally with them that he would convey one-third of it to the complainant or his children within two years. *Thomas M'Cormick* denies all recollection of this verbal agreement. The statement of his co-defendant is no evidence against him, nor is there any evidence sufficient to establish its existence. It is indeed proved that he said at various times, that he intended to convey one-third of the premises to the complainant or his children, and that on one occasion he declared that he would give each of his children 100 dollars as they should respectively arrive at full age. These loose declarations afford no foundation on which the complainant can raise a valid claim to any part of the property; they do not even prove the existence of the parol agreement stated by *M'Clure;* and if they did, that is not such a contract as can be enforced. It does not appear to have had any consideration; and it is, besides, within the statute of frauds, and void for that reason.

We think the Circuit Court erred in their view of this case, and that their decree should be reversed, and the bill dismissed.

VOL. V.—18

May Term, 1839.

M'CLURE
v.
M'CORMICK.

SULLIVAN, J., having been concerned as counsel in the cause, was absent.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*S. C. Stevens,* for the plaintiffs.

*G. H. Dunn,* for the defendant.